UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LORIE WILSON,

          Plaintiff,

    v.

NACM-OREGON SERVICE COMPANY;
LINDA JOHNSON; and BRENDA
TERRAULT,

          Defendants.

Case No. 3:12-cv-01515 -ST

OPINION AND ORDER

STEWART, Magistrate Judge:

**<u>INTRODUCTION</u>**

Plaintiff, Lorie Wilson ("Wilson"), brings this action against NACM-Oregon Service Company ("NACM"), a collection agency, and two of its employees, Linda Johnson ("Johnson") and Brenda Terrault ("Terrault"), for violations of the Fair Debt Collection Practices Act, 15 USC § 1690 *et seq* ("FDCPA"). This court has jurisdiction under 15 USC § 1692k(d). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #10).

Both defendants and plaintiff have filed motions for summary judgment (dockets #21 and #24). For the reasons that follow, both motions are granted in part and denied in part.

///

1 – OPINION AND ORDER

## STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only determine[] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999). A "'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989). The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000). The court must view the inferences drawn from the facts "in the light most favorable to the non-moving party." *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011).

## UNDISPUTED FACTS

On August 5, 2008, Wilson's landlord, Cal-Am Properties ("Cal-Am"), filed suit against her in Washington County Circuit Court Case No. C084449CV, to recover past due rent. Complaint, ¶ 11; Abel Decl., Ex. 1.[1] The court entered an order of default and final judgment against Wilson on October 16, 2008, and sent a Notice of Entry of Judgment to Cal-Am. Abel Decl., Exs. 1, 5. On October 31, 2008, after Wilson filed an answer, the court vacated the judgment, reinstated the case and transferred it to arbitration. *Id*, Ex. 1.

---

[1] The parties had submitted documents with various attachments. Citations to declarations and depositions are identified by the last name of the declarant or deponent, and citations are to paragraphs of the declaration or the pages of the deposition transcript.

On January 30, 2009, the court entered a Judgment of Dismissal after the parties failed to schedule an arbitration hearing in compliance with court procedures.  *Id*, Ex. 6.  After Wilson failed to pay her portion of the arbitration fee, an arbitrator signed a "Supplemental General Judgment with Money Award – Arbitration Award" on February 12, 2009, in favor of Heritage Village Mobile Home Park,[2] for $2,148, $3,079 in attorney fees, and $532 in costs and disbursements.  *Id*, Ex. 7.  The court filed that document as an "Arbitration Award" on March 5, 2009.  *Id*, Ex. 1.  However, the case had been dismissed and closed on January 30, 2009, and was not reinstated prior to entry of that "Arbitration Award."

On April 10, 2009, Cal-Am authorized NACM to collect Wilson's debt.  *Id*, Ex. 8, p. 2.  Johnson worked on Wilson's collections case.  On April 25, 2009, NACM mailed the first notice of Wilson's $6,382.90 debt to 845 SW Liberty Bell Drive, Beaverton, Oregon ("Liberty Bell").  *Id*, Ex. 12.  After it was returned "not deliverable as addressed," NACM sent a similar notice to 20839 SW Trailwalk Drive ("Trailwalk").  *Id*, Ex. 13.  Both notices contained the following information: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid."  The Trailwalk notice was returned because the forwarding address had expired.  *Id*, Ex. 11, p. 6.

Between May 29 and June 25, 2009, Johnson sent a second notice to Wilson at three addresses:  820 Meadowlark Lane, Tillamook, Oregon; the Liberty Bell address; and the Trailwalk address.  *Id*, Ex. 11, p. 6; Exs. 14 & 15.  Before doing so, Johnson confirmed that the Liberty Bell address was on file with the Oregon Department of Motor Vehicles, Accurint, and credit agencies.  *Id*, Ex. 11, p. 6.  All three of the second notices were returned.  *Id.*  On July 11, 2009, Johnson requested a record of Wilson's current address from the postmaster who responded that Wilson had moved without leaving a forwarding address.  *Id.*  Although Johnson

---

[2]  The record does not reveal the connection between Cal-Am and Heritage Village Mobile Home Park.

learned over two years later on October 22, 2011, that Wilson's business, Bar-Be Quties, was located at 1034 Baseline Drive, Cornelius, Oregon, NACM sent no notice to Wilson at that address. *Id*, p. 3.

On February 8, 2010, Heritage Village Mobile Home Park assigned to NACM its rights to the judgment obtained against Wilson in Washington County Circuit Court Case No. CO18409EV, an eviction action against Wilson. *Id*, Ex. 9. At some point after receiving the assignment, Johnson contacted the Washington County Circuit Court clerk's office "to make sure that it is a judgment." Johnson Depo., p. 13. The clerk told Johnson "yes." *Id*. Johnson then served writs of garnishment on Wilson's bank accounts at Bank of the West, West Coast Bank, Oregon First Community Credit Union, Key Bank, US Bank, and Columbia Community Bank. Knewtson Decl., Ex. 1; Abel Decl., Ex. 11, p. 4. In response, West Coast Bank remitted $15.93 to NACM on August 25 and $370.70 on September 16, 2011. Able Decl., Ex. 11, p. 4. Around September 27, 2011, Wilson reported to Johnson that the West Coast Bank funds were Temporary Assistance for Needy Families ("TANF") income and exempt from garnishment. *Id.* Wilson filed a challenge to the TANF garnishment. *Id*, Ex. 1, p. 2. At a hearing on October 21, 2011, the court set over the matter to November 4, 2011, to allow Wilson time to collect itemized statements of her TANF income. *Id*, Ex. 16.

At the next hearing, based on information obtained from the clerk's office after the first hearing, Wilson argued that neither NACM nor Cal-Am had obtained a valid judgment against her. Knewtson Decl., Ex. 10, pp. 4-6. Judge Bailey explained that she would have to separately challenge the judgment and added: "There's a proper judgment in my file, it was signed but — at one point in time it was dismissed, because I think the arbitrator's decision hadn't come in and the court signed off on a judgment at that point in time." *Id*, p. 4. Given his reference to the

"file," he apparently was referring to the Supplemental General Judgment signed by an arbitrator on February 12, 2009, which the court had entered as an "Arbitration Award."  To give Wilson more time to collect documents supporting her garnishment challenge, the court again set the hearing over to November 18, 2011.  *Id*, p. 7

During introductions at the November 18, 2011 hearing, Judge Price stated that "Ms. Johnson is here representing Cal."  *Id*, p. 8.  After hearing Wilson's same objections about the validity of the judgment, the judge again set over the hearing to December 9, 2011, to give the parties more time to sort out the confusion regarding the judgment's validity.  *Id*, pp. 8-13.  When Judge Price commented to Johnson, "I get the distinct impression from you that you don't want to collect any money that you're not entitled to," she answered: "Absolutely."  *Id*, p. 10.

On December 6, 2011, NACM advised the Washington County Circuit Court that, according to the docket, the case had been dismissed without reinstatement and asked the court to release Wilson's garnished funds.  Abel Decl., Ex. 10.  The court entered that order on December 12, 2011.  Able Decl., Ex. 1, p. 3

## DISCUSSION

### I.    Terrault

Terrault seeks summary judgment on the basis that she bears no individual liability under the FDCPA.  As the collections manager for NACM, she "had very little contact with the actual day-to-day collections work," but instead managed the department and its employees, handled the budget, drafted policy, taught classes, and wrote articles.  Terrault Depo., pp. 5-7.

The FDCPA assigns liability to any "debt collector," which it broadly defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 USC § 1692a(6). To determine whether an individual working for a debt collector may be held liable, a court must analyze: "1) whether the individual qualifies as a debt collector, and 2) whether that individual has taken an action that violates the FDCPA." *Cruz v. Int'l Collection Corp.*, 673 F3d 991, 1000 (9th Cir 2012).

NACM argues that the threshold for personal liability is material participation in the debt collection, citing *del Campo v. Kennedy*, 491 F Supp2d 891, 903 (ND Cal 2006), and earlier district court cases. However, in *del Campo* and similar cases, the plaintiffs sought to hold the individual defendants vicariously liable based on their ownership or management role in the collections agency, as opposed to their personal involvement in the alleged FDCPA violations. More recently in *Cruz*, the Ninth Circuit concluded that it is still an "open question whether, if an officer qualifies as a debt collector, that officer may be held personally liable based solely on the action of serving in his role as officer of the company." *Cruz*, 673 F3d at 1000. *Cruz* did not answer that question because the officer "was personally involved in at least one violation of the FDCPA." *Id.*

Following the two-step process set forth in *Cruz*, this court must first determine if Terrault qualifies as a "debt collector." The answer is yes, for two reasons. First, defendants admitted in their Answer that Terrault was a "debt collector defined by 15 U.S.C. § 1692a(6)." Answer (docket #3), ¶ 6. Second, even without that admission, Terrault falls within the definition of a "debt collector" under the FDCPA. As the "Attorney for the Creditor," she signed at least one writ of garnishment for Wilson's accounts at Bank of the West for the purpose of satisfying Wilson's $7,920.43 debt. Knewtson Decl., Ex. 1. The writ instructed the garnishee, Bank of the West, to remit any funds by mail to Terrault. *Id.* A lawyer filing an application for

writ of garnishment is clearly subject to the definition of "debt collector" in this circuit.  *See Fox v. Citicorp Credit Servs., Inc.*, 15 F3d 1507, 1513 (9th Cir 1994) ("We thus reject the district court's conclusion that Kaplan is not covered by the FDCPA because the filing of an application for a writ of garnishment is a 'pure legal action.' Attorneys, like all other persons, are subject to the definition of 'debt collector' in 15 U.S.C. § 1692a(6).").

As to the second step of the analysis, Terrault did take an action that violates the FDCPA. By signing the writ of garnishment, Terrault certified that "[a] judgment was entered against the Debtor for the debt." Knewtson Decl., Ex. 1.  As discussed below, this representation created the false impression that NACM had obtained a valid judgment against Wilson permitting it to garnish her accounts.  Thus, Terrault may be held liable for committing violations of the FDCPA related to her signing of the illegal writ of garnishment.  Thus, Terrault's motion for summary judgment on the basis that she cannot be held personally liable as a debt collector is denied.

## II.    **Bona Fide Error Defense**

NACM also seeks summary judgment for all alleged violations based on the bona fide error defense.  The FDCPA is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional."  *Reichert v. Nat'l Credit Sys., Inc.*, 531 F3d 1002, 1005 (9th Cir 2008), citing *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F3d 1162, 1176 n11 (9th Cir 2006).  However, the bona fide error defense provides a "narrow exception to strict liability."  *Clark*, 460 F3d at 1177.   This statutory defense states that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 USC § 1692k(c).

Because the bona fide error defense is an affirmative defense, defendants have the burden of proof.  *Fox*, 15 F3d at 1514.  To qualify for the bona fide error defense, a debt collector must prove that "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation."  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F3d 939, 948 (9th Cir 2011).

Wilson argues that the bona fide error defense applies only to the violations arising from "the validity of the debt" as alleged in ¶ 18 of the Answer.  Accordingly, she requests that the court strike defendants' application of the defense to all other violations.  This court does not so narrowly read the Answer.  Every alleged violation by Wilson arises out of the validity of the underlying debt.  Not only did defendants assert the bona fide error as a general defense in the Answer, but the parties also have conducted extensive discovery regarding this defense as to all alleged violations.  Thus, this court construes the bona fide error defense with respect to all of Wilson's allegations.

## A.    Representation as Attorney

Wilson alleges that defendants violated 15 USC § 1692e(3) by creating the false impression that Johnson was an attorney at the court hearings to resolve Wilson's challenge to the garnishment.  Under 15 USC § 1692e(3), the "false representation or implication that any individual is an attorney or that any communication is from an attorney" is a violation of the statute.  Determining whether conduct violates § 1692e requires an objective analysis taking into account whether the "least sophisticated debtor would likely be misled by a communication." *Donohue v. Quick Collect, Inc.*, 592 F3d 1027, 1033 (9th Cir 2010).  Unlike other circuits that treat the question of whether a communication is likely to mislead the least-sophisticated debtor

as an issue of fact, "a debt collector's liability under § 1692e of the FDCPA is an issue of law" in the Ninth Circuit. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F3d 1055, 1061 n3 (9th Cir 2011).

At no time did Johnson tell Wilson or the court that she was an attorney. She or NACM could only be liable under § 1692e if her actions or statements falsely implied as much. No genuine issue of material fact exists as to how Johnson represented herself. She signed correspondence with Wilson and the court as a "Litigation Manager" or a "Litigation Specialist." Abel Decl., Exs. 10, 12-14. Because lawyers usually refer to themselves as "attorney, "counsel," or "lawyer," even the least sophisticated debtor would not be misled that "Litigation Manager" necessarily refers to a lawyer. In addition, any implication inherent in the word "Litigation" never reached Wilson because she did not receive the correspondence signed by Johnson using these titles.

Wilson argues that Johnson's presence in court was enough to imply she was an attorney. As support, Wilson cites ORS 46.415(5) that requires corporations be represented in all court hearings, except in small claims court. Of course, the least sophisticated debtor would be ignorant of this statute and would more likely believe that non-lawyers could appear before a court, just as she was allowed to do. At all three court hearings, Johnson referred to herself as representing NACM and Cal-Am. At the November 18, 2011 hearing, the judge did not refer to Johnson as a lawyer, counsel, or attorney, but introduced her only as "representing Cal." Knewtson Decl., Ex. 10, p. 8. At worst this implied she was representing Cal-Am, when in fact she was representing NACM.

Any false implication that Johnson was an attorney was created by the court. All three judges allowed Johnson to appear outside of small claims court to defend the garnishment. Even before Wilson filed this case, NACM never received any feedback from the court about Johnson

representing it in circuit court.  Terrault Depo., p. 39.  Thus, defendants did not intentionally create a false implication that Johnson was an attorney and are entitled to summary judgment on this alleged violation.[3]

**B.    Fair Notice**

Wilson also alleges that defendants violated the FDCPA's fair notice provision ("section g"), which provides as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" among other things, "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt . . . the debt will be assumed to be valid by the debt collector.

15 USC § 1692g(a).

Only the notices dated April 20 and April 25, 2009 contained this required statement, and both of those notices were returned undelivered.  Thus, the issue is whether defendants complied with the statute by sending those notices.

Wilson contends that she never received the notices dated April 20 and April 25, 2009.  However, she testified that the garnishment package was her first notice of the debt "that I can remember at this time."  Wilson Depo., p. 102.  Although lack of memory alone is not sufficient to prove lack of receipt, it is undisputed that the notices were returned undelivered.  Regardless, actual receipt is not required.  "The plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor.  Instead, the plain language states that such a Notice need only be sent to a debtor."  *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171

---

[3] No evidence has been submitted that connects Terrault to this violation.

F3d 1197, 1201 (9th Cir 1999).  Wilson has submitted no evidence that NACM failed to send the notice or that that it failed to do so on time.

Nonetheless, Wilson seeks summary judgment on the basis that NACM sent the notices to the wrong addresses.  As support, she cites *Kim v. Gordon*, No. CV-10-1086-HZ, 2011 WL 3299813 (D Or Aug. 2, 2011), which found the debtor had violated the notice requirements by sending a validation notice labeled with an incomplete mailing address.  NACM made no error in filling out Wilson's purported address.  Instead, the letters were undeliverable because Wilson did not provide a forwarding address.  Abel Decl., Ex. 11, p. 6.

However, there is support for finding a violation when a debt collector sends a notice to an address with knowledge that the debtor does not live there.  "Generally, when a debt collector sends a letter to a debtor regarding a debt, there is a presumption that 'communication with' the debtor has taken place.  *Horvath v. Premium Collection Servs., Inc.*, No. CV-09-2516PHX-GMS, 2010 WL 1945717, at *4 (D Ariz May 13, 2010), citing *Mahon*, 171 F3d at 1201.  "This presumption, however, can be rebutted by showing that the initial letter 'was sent to an incorrect address and returned as undeliverable.'"  *Id*, quoting *Campbell v. Credit Bureau Systems, Inc.*, Civil Action No. 08-CV-177-KSF, 2009 WL 211046, at *12 (ED Ky Jan. 27, 2009).  In other words, "when a written notice is returned as undeliverable, it has not actually been *sent* to the *consumer.*  Rather, it has been *sent* to an *improper address* for the consumer."  *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2006 WL 2473004, at *12 (ND Ohio Aug. 24, 2006).

NACM first sent notices containing the required content to Wilson at the Liberty Bell and the Trailwalk addresses.  Despite the fact that both notices were returned, Johnson sent a second notice to both addresses.  NACM argues that it was justified in continuing to send notices to

Wilson at the Liberty Bell and Trailwalk addresses after confirming the Liberty Bell address with the Oregon Department of Motor Vehicles, Accurint, and credit agencies. Because NACM's own correspondence confirmed that mail to Wilson was undeliverable at the Liberty Bell address, those agencies may have had outdated records.

The problem is that NACM never sent a notice to Wilson's restaurant at 1034 Baseline, Cornelius, Oregon. According to NACM's collection log, Johnson knew of this address as early as August 11, 2011. Abel Decl., Ex. 11, p. 5. NACM did not send a notice to the Baseline address at that time or even two months later when Johnson learned that was the address of Wilson's business, Bar-Be Quties. Instead of attempting to send a notice to this new address in August 2011, over two years since NACM had last tried to contact Wilson, NACM issued writs of garnishment to seven bank accounts. In fact, at least one writ of garnishment included the Baseline address as Wilson's address. Knewtson Decl., Ex. 1, p. 3. Again, on October 22, 2011, after receiving information verifying that Wilson would receive mail at the Baseline address, Johnson continued to defend the garnishments that had already occurred, and prepared another writ of garnishment. Abel Decl., Ex. 11, p. 3.

Thus, no genuine issue of material fact exists that NACM and Johnson violated § 1692g(a) and cannot rely on the bona fide error defense. Because Johnson kept detailed records of when she received information about Wilson's possible addresses, the failure to send a notice to the correct address cannot be deemed unintentional. No evidence has been submitted that Johnson intended to send the notice to Wilson's restaurant but was prevented from actually doing so by some error. Thus, the court grants summary judgment in favor of Wilson against NACM and Johnson on this alleged violation.[4]

///

---

[4] No evidence has been submitted connecting Terrault to this alleged violation.

C.      **Collection of Debt**

Wilson alleges that defendants violated 15 USC §§ 1692e(2), e(4), e(5), e(9), e(13), f,[5]

f(1), and f(6), by garnishing her assets without an assignment of a valid judgment from Cal-Am.

Those statutes provide as follows:

> § 1692e.  False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2) The false representation of — (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . .
>
> (4) The representation or implication that nonpayment of any debt will result in the arrestor imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
>
> (9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval. . . .
>
> (13) The false representation or implication that documents are legal process. . . .
>
> § 1692f.  Unfair practices
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

---

[5] Wilson's allegations do not support a claim under any other subsection of § 1692f, other than (1) and (6).

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

(6)  Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if — (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

Two of those section, §§ 1692e(4) and e(5), cover threats and false representations made by the debt collector in an effort to intimidate the debtor.  Wilson has submitted no evidence that NACM or its employees made any threats to Wilson.

NACM does not dispute that it violated §§ 1692 e(2), e(9), e(13), f(1), and f(6) in collecting the debt and issuing writs of garnishment without a valid judgment, but contends that those violations are excused by a bona fide error.  The undisputed evidence establishes that NACM unintentionally erred in issuing illegal garnishments.  It had no intent to collect the amount due on an invalid judgment.  No one notified NACM that the court had dismissed the case on January 30, 2009, before NACM began issuing writs of garnishment.  NACM did not discover the judgment's invalidity until the third hearing regarding Wilson's challenge to the garnishment.  Moreover, NACM's belief in the validity of its actions was reinforced by two different judges during those proceedings.  At the November 4 hearing, Judge Bailey responded to Wilson's challenge to the judgment by stating that:  "They should not have told you that, because there's a judgment in my file."  Knewtson Decl., Ex. 10, p. 6.  Johnson testified that when Wilson handed her the judgment of dismissal, "That's when I was like, whoa.  But after hearing Judge Whomever, I was thinking that, no, we had a valid judgment still in my mind, and it was – she was mistaken."  Johnson Depo., p. 36.  Even at the next hearing, Judge Price could not confirm the actual status of the case.  Knewtson Decl., Ex. 10, pp. 10-11.

14 – OPINION AND ORDER

Thus, the issue is whether NACM had policies in place that were reasonably adapted to avoid making this mistake.  NACM argues that it had a reasonable policy which consisted of relying on documents provided by the underlying creditor.  According to Terrault, NACM "received paperwork from Cal-Am that said we had a judgment."  Terrault Depo., p. 34.  If the debt collector presents evidence that it "reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors."  *Clark*, 460 F3d at 1177.  "On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report."  *Id.*

Wilson questions NACM's reliance on Cal-Am based on the documentation that Terrault and other NACM employees obtained from Cal-Am.  Johnson's notes documenting the assignment do not reference the receipt of the judgment.  Abel Decl., Ex. 11, p. 5.  Moreover, Terrault testified she could not remember looking at any support documentation from Cal-Am: "I have to correct myself.  I don't know if I actually physically looked at [a document showing a judgment] at this point."  Terrault Depo., p. 35.  And when asked if "the reason you made the certification was because you had reviewed the document," she responded, "I looked on the computer screen.  I saw the numbers were reflected accurately and, therefore, I believed, because nothing had been brought to my attention, a judgment that we did not have or information to that point."  *Id*.

When proceeding to garnish Wilson's bank accounts, NACM could not reasonably rely solely on Cal-Am's representation of the debt's validity.  However, NACM took an additional step to verify the debt before proceeding with a garnishment.  It has a policy to "double-check" with the court that the client had properly obtained a judgment.  *Id*, p. 36; Johnson Depo., p. 13.

Following that policy, Johnson called the Washington County Circuit Court to confirm with the clerk's office that Cal-Am had a judgment against Wilson.  Arguing that the OJIN docket is the only reliable source of verification, Wilson claims that calling the clerk's office is insufficient and that NACM did not act reasonably unless one of its employees personally checked the docket.  However, OJIN receives manual input and, therefore, is just as susceptible to human error as obtaining information from a representative in clerk's office.  Moreover, the judges also had access to OJIN, as well as the actual court file.  Therefore, the policy of calling the clerk's office to verify a judgment is not an inherently unreasonable procedure adapted to avoid the error that occurred here.

However, NACM had no policy to document its verification attempts.  NACM's collection log contains no mention of any telephone call by Johnson to the Washington County Circuit Court clerk's office.  Terrault also testified that the collection log contains no note evidencing that she had reviewed documentation verifying a judgment before signing the garnishment.  Terrault Depo., p. 34.  NACM has no record of the judgment because its "double-check" policy does not require any documentation of the call to the clerk's office by either the employee who made the call or who later signed the writ of garnishment.  *Id*, p. 35.  Because the judgment is the legal basis for the collection of the debt, the lack of any documentation to verify the judgment is simply not reasonable.  As Terrault acknowledges, NACM does scan documents into the system so an employee can "open those up and you can see them from there."  *Id*, p. 36. The same can and should be done with a copy of the judgment.  At a minimum, some written record should be kept of any and all attempts to verify the judgment, especially if done orally.

Accordingly, this court concludes that Wilson is entitled to summary judgment against defendants for violations of 15 USC §§ 1692e(2), e(9), e(13), f(1), and f(6).

### D.    Falsification of Assignment of Judgment

Next Wilson alleges that defendants violated 15 USC § 1692e(9) by falsely representing on the writs of garnishment that NACM had obtained a judgment against Wilson in case number C084449CV, and that Cal-Am had assigned NACM the right to collect that judgment.  Under § 1692e(9), "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval" is a violation of the statute.

The writs of garnishment falsely represented, or at least created the impression, that Cal-Am had assigned NACM a valid judgment in Case No. C084449CV.  The writ of garnishment to Bank of the West is captioned "NACM-OREGON SERVICE COMPANY LUNDA JOHNSON-AGENT vs. LORIE ANN WILSON . . . Case No. C084449CV."  Knewtson Decl., Ex. 1, p. 1.  It also stated "[a] judgment was entered against the Debtor."  *Id.*  The signature on the writs certified "that I have read this writ of garnishment and to the best of my knowledge, information and belief, there is good ground to support issuance of the writ, and the amount indicated as subject to garnishment is lawfully subject to collection by this writ."  *Id*, p. 3.  However, there is no record of a valid judgment or assignment in Case No. C084449CV.  Again the issue is whether the bona fide error defense applies.

On February 22, 2010, Johnson made an entry in the collection log that NACM had received the executed assignment of judgment.  *Id.*  However, the assignment received by NACM was for a judgment in another case.  Abel Decl., Ex. 9.  Nevertheless, Johnson's note on August 12, 2012, repeated that "the judgment has been assigned to NACM."  *Id.*  It is unclear how the error occurred in executing an assignment in the wrong case.  Terrault explained only

that: "We had another document somewhere that had another number in it, I guess." Terrault Suppl. Depo., p. 40.

Even assuming that this was an unintentional clerical error, NACM has not met its burden of showing that it maintains procedures to avoid making such errors. It purports to have a computer system that automatically fills in the caption and procedures that rely on the OJIN printout to obtain the case number. Terrault Depo., p. 53; Terrault Suppl. Depo., p. 40. But none of those procedures would prevent the error that occurred here: failing to confirm not only that Cal-Am had executed an assignment to NACM in the correct case, but also that the assigned judgment was valid. Thus, NACM may not avail itself of the bona fide error defense for its violation of 15 USC § 1692e(9). As a result, Wilson is entitled to summary judgment against defendants on this alleged violation.

## III. <u>Statutory Damages Cap</u>

NACM seeks summary judgment on the maximum amount of statutory damages that Wilson may collect in addition to actual damages. The FDCPA allows "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 USC § 1692k(a). This provision has been interpreted to cap additional damages "to $1,000 per lawsuit, not $1,000 per violation," although "the fact that numerous violations of the FDCPA are predicated upon one set of circumstances *should* be considered and . . . it is best considered during the calculation of damages." *See, e.g.*, *Nelson v. Equifax Info. Servs., LLC*, 522 F Supp2d 1222, 1238 (CD Cal 2007), citing *Clark*, 460 F3d at 1178. The issue presented here is whether this provision allows additional damages of up to $1,000 against each defendant.

The court has located only two courts in the Ninth Circuit that have even mentioned this issue, and they reached opposite conclusions. In an action against a collections agency and its

attorney, Judge Hubel stated that § 1692k(a)(2)(A) "allows the court to award additional or statutory damages not exceeding $1,000 *per proceeding, per defendant*, without regard to the actual number of violations and without proof of actual damages." *Avery v. Gordon*, 08-139-HU, 2008 WL 4793686, at *3 (D Or Oct. 27, 2008) (emphasis added). However, he made this statement in his summary of the FDCPA without resolving a dispute between the parties or citing any authority. In contrast, earlier that same year, the Eastern District of California addressed the argument made by the collection agency and its attorneys that the $1,000 cap applies to each action, not to each defendant. The court concluded that defendants "are correct" because "[t]he statute itself provides that 'in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.'" *Lowe v. Elite Recovery Solutions L.P.*, CIV S-07-0627RRB GGH, 2008 WL 324777, at *2 (ED Cal Feb. 5, 2008), citing 15 USC § 1692k(a)(2)(A) . In reaching that conclusion, it cited two other cases, neither of which addressed whether statutory damages may be awarded against multiple defendants in the same action. Therefore, *Lowe* also provides little guidance.

Cases from outside the Ninth Circuit are more helpful. In *Overcash v. United Abstract Grp., Inc.*, 549 F Supp2d 193 (ND NY 2008), two collection agencies violated the FDCPA on more than one occasion. Contradicting an earlier decision by the Southern District of New York limiting damages to $1,000 per case, the Northern District of New York reasoned that:

> By its terms, however, the statute does not impose such a limitation. The statute provides, in part, that "any debt collector . . . is liable" for additional damages not to exceed $1,000. In other words, the limitation that the statute imposes is cast not in terms of the plaintiff's recovery, but in terms of the defendant's liability. Thus, in the case of multiple defendants, each may be liable for additional damages of up to $1,000.

*Id* at 196-97, citing *Ganske v. Checkrite, Ltd.*, No. 96-cv-0541, 1997 WL 33810208, at *5 (WD Wis Jan. 6, 1997); followed by *Jones v. Investment Retrievers, LLC*, 3:10-CV-1714, 2011 WL 1565851, at *7 (MD Pa Apr. 25, 2011) (allowing additional damages against both the collection agency and its law firm).

   *Overcash* is distinguishable because the defendants were two separate and distinct companies, not a debt collection company and its employees. The case it cites, however, involved a situation more similar to the one presented here. In *Ganske*, the plaintiff sued a collection agency and its subsidiary in one case and a lawyer and his law firm in a second case. The subsidiary in the first case and the law firm in the second case each sent letters that allegedly violated the FDCPA. The plaintiff argued that statutory damages could be imposed against each defendant in each proceeding. The court disagreed. It acknowledged that based on the statutory language, statutory damages can be imposed against more than one debt collector in a single proceeding, but only "if it is established by the plaintiff that each debt collector *independently* violated the FDCPA." *Ganske*, 1997 WL 33810208, at *5 (emphasis added). The plaintiff did not allege that the parent collection agency and the individual lawyer "independently violated the FDCPA," but named them with the other defendants "for the purpose of joint and several liability only." *Id*. "Therefore, each set of defendants named in the two proceedings before this Court may be found jointly and severally liable for an award of $1,000 in statutory damages pursuant to § 1692k(a)." *Id.*

   This court finds this approach to be persuasive. Allowing an award of additional damages up to $1,000 per defendant furthers the purpose of the FDCPA to create an incentive for debt collectors to obey the law, but limiting that award to defendants acting independently from each other also avoids an unwarranted double recovery. It is clear that the violations committed

by NACM are based on actions taken by Terrault and/or Johnson. In other words, Terrault and Johnson did not act separately and independently from NACM. Applying the *Ganske* reasoning, Terrault and Johnson are not subject to additional statutory damages of $1,000 each, but may be held jointly and severally liable for statutory damages assessed against NACM based on the same FDCPA violations.

### **ORDER**

For the reasons stated, NACM's Amended Motion for Summary Judgment (docket #24) is GRANTED in part and DENIED in part and Wilson's Motion for Summary Judgment (docket #21) IS GRANTED in part and DENIED in part as follows:

1. Terrault is a debt collector pursuant to 15 USC § 1692a(6);

2. Defendants did not violate 15 USC §§ 1692e(3), e(4) or e(5);

3. NACM and Johnson violated 15 USC § 1692g by failing to send the required notice to Wilson and that violation did not result from a bona fide error;

4. Based on the illegal garnishments without a valid judgment or assignment, defendants violated 15 USC § 1692e(2), e(9), e(13), f(1), and f(6), and those violations did not result from a bona fide error; and

5. Terrault and Johnson may be held jointly and severally liable for any additional statutory damages under 15 USC § 1692k(a) imposed against NACM based on the same FDCPA violations;

Thus, the remaining issues are damages recoverable by Wilson for violations of 15 USC §§ 1692e(2), e(9), e(13), f(1), f(6), and g.

DATED December 19, 2013.                    s/ Janice M. Stewart

                                            _____
                                            Janice M. Stewart
                                            United States Magistrate Judge